UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BENEDICT CRACOLICI, | Civil No. 10-2482 (JBS) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION & ORDER** |
| BUREAU OF PRISONS et al., | |
| Defendants. | |

It appearing that:

1. Plaintiff Benedict Cracolici ("Plaintiff"), an inmate currently confined at the F.C.I. Fort Dix, seeks to bring this action in forma pauperis, pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), alleging violations of his constitutional rights. See Docket Entry No. 1. Based on his affidavit of indigence, see Docket Entry No. 2, and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a), and will order the Clerk of the Court to file the complaint.

2. Plaintiff submitted the total of four documents: (a) his civil complaint, see Docket Entry No. 1; (b) his in forma pauperis application, see Docket Entry No. 2; (c) an exhibit to his complaint, see Docket Entry No. 3; and (d) an application for appointment of pro bono counsel. See Docket Entry No. 4.

3. Plaintiff's complaint named, as Defendants in this matter, the following persons and entities: (a) the Bureau of Prisons ("BOP"); (b) Ms. Hood (who, according to the Complaint, is a "counselor [and] laision [sic] to other departments"); (c) Mr. Herbik

(who, according to the Complaint, is a "Unit Manager and Ms. Hood's supervisor"); (d) Mr. Rayes (who, according to the Complaint, is another "counselor"); (e) Scott Rodrill (who, according to the Complaint, is a "Regional Director");[1] (f) Warden Grondolsky (the former warden of F.C.I. Fort Dix); and (g) Warden Zickerfoose (the current warden at the F.C.I. Fort Dix).[2]  See Docket Entry No. 1, at 1 and 3-5.

4. Plaintiff's allegations with regard to the above-named Defendants are as follows:

   a. Plaintiff makes no allegations against the BOP.  In light of this fact, and also in light of the fact that the BOP is not a "person" within a meaning of a civil suit asserting jurisdiction under Bivens,[3] Plaintiff's claims against the BOP will be dismissed, with prejudice.

   b. With regard to Hood, Plaintiff asserts that she violated Plaintiff' rights because she "denied [Plaintiff] access to the proper forms to attempt administrative remedy."  Id. at 4.

---

[1] Mr. Rodrill has become an Assistant Director at the Central Office of the BOP in June of 2009, that is, about eight months prior to Plaintiff's execution of the Complaint at hand.  See <<http://www.bop.gov/about/co/director_bio_programs.jsp>>; compare Docket Entry No. 1, at 9.

[2] Warden Zickerfoose was appointed to her position as the warden of F.C.I. on November 8, 2009.  See, e.g., Neagle v. Grondolsky, 2010 U.S. Dist. LEXIS 61429, at *2 (D.N.J. June 18, 2010).

[3] As § 1983 action applies only to state actions, it is not available to federal prisoners; the federal counterpart is an action under Bivens alleging deprivation of a constitutional right.  See Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3d Cir. 2001) ("A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law").  A department of corrections is not a "persons" subject to suit under § 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); see also Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994).

    c.      As to Herbik, Plaintiff asserts that Herbik violated his rights because Herbik "did not answer [Plaintiff's] BP-8 denying [Plaintiff] access to the [a]dministrative [r]emedy [p]rocess."[4] Id.

    d.      With regard to Rayes, Plaintiff similarly asserts that Rayes violated his rights because he "denied [Plaintiff] administrative remedy forms when [Plaintiff] requested them." Id.

    e.      Addressing his claims against Rodrill, Plaintiff states that Rodrill violated his constitutional rights when "[Plaintiff] sent him a hand written BP-10 explaining how [Plaintiff's] right were being violated and all he did was reject it because it wasn't on the proper form." Id. at 5.

    f.      Proceeding to Warden Grondolsky, Plaintiff asserts that he "sent [Grondolsky] an ersatz BP-9 telling him that Hood and Herbik would not assist [Plaintiff] with [Plaintiff's] administrative remedies, and neither did Grondolsky after [Plaintiff] asked him to."[5] Id.

---

[4] An allegation of a failure to investigate, *without another recognizable constitutional right*, is not sufficient to sustain a section 1983 claim. See Graw v. Fantasky, 68 Fed. App'x 378 (3d Cir. 2003); Burnside v. Moser, 138 Fed. App'x 414, 416 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process); Lewis v. Williams, 2006 U.S. Dist. LEXIS 8444 (D. Del. 2006) (failure to investigate grievance does not raise a constitutional issue); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim); see also Stringer v. Bureau of Prisons, 145 Fed. App'x 751, 753 (3d Cir. 2005) (a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable") (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).

[5] The content of Plaintiff's claim against Grondolsky is not entirely clear to this Court. The Court presumes, for the purposes of this Order only, that Grondolsky did not respond to Plaintiff's submission. However, if so, Plaintiff's claim is without merit, same as Plaintiff's claim against Herbik, and it must be dismissed. See note 4, supra.

      g.      Finally, with regard to Warden Zickerfoose, Plaintiff maintains that Zickerfoose, too, violated his rights because "[s]he sent [Plaintiff] a 'Response' stating that [Plaintiff] was afforded [an o]pportunity to resolve [his] complaints which [in Plaintiff's opinion, was] about as far from the truth as it gets."[6]  Id.

5.      Switching to the substance of his claims, Plaintiff asserts that, after having a quadruple bypass surgery, Plaintiff returned to the F.C.I. Fort Dix and requested various accommodations (such as daily living assistance, bathing, dressing, obtaining a wheelchair, getting in and out of the wheelchair, having the wheelchair propelled to assist Plaintiff in his transportation needs, etc).  See id. at 6.  The "Statement of Claim" portion of the complaint focuses solely on the events associated with Plaintiff's wheelchair: it appears that Plaintiff was provided with one, but that device – in Plaintiff's opinion – was suited only for indoor rather than outdoor usage and, in addition, Plaintiff was provided with no prison officials' assistance as to getting in and out of the wheelchair (that is, short of one instance when Plaintiff was allegedly assisted by an officer who pushed Plaintiff's wheelchair from the medical unit to Plaintiff's cell).  See id. (asserting that, in all other instances, Plaintiff had to "beg other prisoner to push" his wheelchair, and this process felt very demeaning to him).  Plaintiff also asserts that the physical efforts associated with

---

[6] The Court is not entirely clear as to why Plaintiff's reading of Zickerfoose's alleged response construes the phrase "resolve his complaints" as necessarily implying a resolution favorable to or preferred by Plaintiff.  An unfavorable outcome of administrative process might, indeed, be a result of a full opportunity to resolve the grievant's claims, but such outcome does not guarantee the underlying events from being qualifies as a violation of the grievant's civil rights.  In other words, if the administrative answer is a "no," it is still an answer, although the administrative decision underlying that answer might be reached in violation of one's civil rights.

        placing himself in and out of the wheelchair, as well as the situations when Plaintiff had to propel himself around the facility, caused him excruciating pain. See id. at 6-7.

6. While the substance of Plaintiff's allegations seems to suggest that Plaintiff is aiming to allege a violation of his Eighth Amendment rights (on the grounds of alleged denial of medical after-care in the form of an appropriate wheelchair and/or a person assisting Plaintiff with regard to getting in and out of that wheelchair, and also propelling Plaintiff),[7] the allegations stated in Plaintiff's complaint with regard to the particular persons named as Defendants state facts qualitatively different – if not wholly divorced – from the issue of the alleged denial of medical care: indeed, these allegations are limited to denial of administrative remedy forms.

7. To the extent Plaintiff is seeking to avoid dismissal of his complaint on the grounds of Plaintiff's failure to exhaust his administrative remedies, this Court presumes – for the purposes of this Order only – that Plaintiff duly exhausted his administrative remedies by submitting his "ersatz" grievances.[8] However, that presumptively established due exhaustion cannot be utilized in lieu of a substantive claim, with regard to which Plaintiff has to first assert all facts related to that claim and then *connect each named Defendant to that claim* (indicating that particular Defendant's *personal* involvement in the alleged

---

[7] Alternatively, Plaintiff's claims could be construed as aiming to assert a violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.

[8] At the instant juncture – that is, screening Plaintiff's complaint for sua sponte dismissal and having no Plaintiff's administrative record on file – the Court is obligated to presume that the facts asserted by Plaintiff are true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff").

substantive wrong).[9]  In other words, in the event some of the named Defendants (or all of them, or government officials other than Defendants named in the complaint at bar) were the persons whom Plaintiff alleges to have denied him such medical care/accommodations, Plaintiff shall identify *those* persons as defendants, and he must also assert facts related to these *medical* requests and deprivations: when and what Plaintiff specifically requested, and whom from, and who denied Plaintiff's request, and in what terms (or actions) that denial was made, and whether Plaintiff was provided with any alternative accommodations, and what these alternative accommodations were, etc.[10]

---

[9]  In Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-54 (2009), the Supreme Court clarified that allegations based solely on supervisory liability fail to state a claim: a litigant does not state a cognizable claim if he asserts nothing but a claim based on the respondeat superior theory.  See also Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement can be asserted through allegations of specific facts showing that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.  Moreover, even if the litigant's claims are not based on the doctrine of respondeat superior, the litigant must assert specific facts implicating the named defendant.  Personal involvement by a defendant is an indispensable element of a valid legal claim.  See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Sample v. Diecks, 885 F.2d 1099, 1100 (3d Cir. 1989); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); accord Mimms v. U.N.I.C.O.R., 2010 U.S. App. LEXIS 14321, at *4 (3d Cir. July 13, 2010) ("The District Court properly dismissed the claims against [those defendants with regard to whom the plaintiff] simply failed to state any allegation against," citing Iqbal, 129 S. Ct. at 1949).

[10]  Plaintiff's exhibits, Docket Entry No. 3, suggest that the staff of F.C.I. Fort Dix medical department was responsible for denial of medical care.  However, the complaint does not identify any such person (or any other person) as a defendant, and the Court neither can determine the identities of such potential defendants with sufficient certainty nor has the mandate to alter Plaintiff's complaint by naming alternative defendants.

6

9. Conversely, in the event Plaintiff's factual allegations are limited to denial of administrative forms, these allegations pertain solely to a procedural bar and fail to state a substantive claim. See, e.g., Baldauf v. Garoutte, 137 Fed. App'x 137, 141 (10th Cir. 2005) ("administrative remedies are not 'available' when prison officials refuse to provide prisoners with grievance forms"), cert. denied, 546 U.S. 1183 (2006); see also Johnson v. Wackenhut Corrections Corp., 130 Fed. App'x 947, 950 (10th Cir. 2005)(stating "[c]ourts have held that refusing a prisoner grievance forms could raise an inference that the prisoner has exhausted 'available' administrative remedies") (citing Miller v. Norris, 247 F.3d 736, 738, 740 (8th Cir. 2001)); compare Watley v. Goodman, 31 Fed. App'x 169, 170 (6th Cir. 2002) (dismissal proper in that prisoner was refused grievance forms because he did not follow procedure for requesting such forms, he did receive forms when he followed proper procedure, and he did "not allege that there was no other source for obtaining a grievance form or that he made any other attempt to obtain a form or to file a grievance without a form"). Therefore, as drafted, the complaint is subject to dismissal even with regard to all Defendants other than the BOP, Herbik, Grondolsky and Zickerfoose.

10. However, it appears that Plaintiff, if given an opportunity to amend his pleading, might cure the deficiencies of his instant submission. Therefore, the Court finds it warranted and in the interests of justice to provide Plaintiff with an opportunity to file an amended complaint.

IT IS, therefore, on this **3rd** day of **August**, **2010**,

ORDERED that Plaintiff's application to proceed in forma pauperis is hereby granted, and the Clerk shall file the Complaint without prepayment of the filing fee; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk shall serve a copy of this Memorandum Opinion & Order, by regular mail, upon the United States Attorney for the District of New Jersey and upon the Warden of Plaintiff's place of confinement; and it is further

ORDERED that Plaintiff is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below, regardless of the outcome of the litigation; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), Plaintiff is assessed an initial partial filing fee equal to 20% of the average monthly deposits to the Plaintiff's prison account for the six month period immediately preceding the filing of the Complaint; when funds exist, the New Jersey Department of Corrections shall deduct said initial fee from Plaintiff's prison account and forward it to the Clerk; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in Plaintiff's prison account exceeds $10.00, the New Jersey Department of Corrections shall assess, deduct from the Plaintiff's account, and forward to the Clerk payments equal to 20% of the preceding month's income credited to Plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that the Clerk shall serve this Memorandum Opinion & Order upon Plaintiff by certified mail, return receipt requested; and it is further

ORDERED that the complaint, Docket Entry No. 1, is dismissed.  Such dismissal is with prejudice as to Plaintiff's claims the Bureau of Prisons, but without prejudice as to Plaintiff's claims against the remaining Defendants; and it is further

ORDERED that Plaintiff may file an amended complaint clarifying his claims against the remaining Defendants or any other persons/entities whom Plaintiff believes to be liable to him for denial of medical care; Plaintiff's submission of his amended complaint shall be made within thirty days from the date of entry of this Order; and it is further

ORDERED that Plaintiff's application for appointment of <u>pro bono</u> counsel is denied, as premature at the instant juncture.  Such denial is without prejudice to renewal of Plaintiff's motion in the event the Court screens Plaintiff's amended pleading and, upon proceeding it past the <u>sua sponte</u> dismissal, directs service of the amended complaint; and it is finally

ORDERED that the Clerk shall close the file on this matter subject to reopening in the event of the Clerk's receipt of Plaintiff's timely submitted amended pleading.

<u>**s/ Jerome B. Simandle**</u>
Jerome B. Simandle
United States District Judge